FIRST DIVISION

September 29, 1997

No. 1-96-0493

PATRICIA HOCHBAUM, ) Appeal from the

 ) Circuit Court

Plaintiff-Appellant, ) of Cook County.

 )

v. )

 )

MARLENE E. CASIANO, JOSEPH M. )

MERCOLA, indiv., JOSEPH M. )

MERCOLA, D.O.S.C., ELI LILLY & )

COMPANY, and DISTA PRODUCTS )

COMPANY, a division of Eli )

Lilly & Company, ) Honorable

 ) PHILLIP L. BRONSTEIN,

Defendants-Appellees. ) Judge Presiding.

JUSTICE BUCKLEY delivered the opinion of the court:

Plaintiff, Patricia Hochbaum, brought this medical malpractice and product liability action against Dr. Marlene Casiano and Dr. Joseph Mercola, her treating physicians, and Eli Lilly and Company and its division Dista Products (Lilly), manufacturers of the drug Prozac.  Plaintiff sought to recover damages for personal injuries she sustained when she attempted to commit suicide while being treated with Prozac by Dr. Casiano and Dr. Mercola.  The circuit court granted summary judgment in favor of defendants, finding that the action was barred by the two-year statute of limitations.  Plaintiff now appeals, claiming that (1) the discovery rule tolled the limitations period, and (2) plaintiff was a person under a legal disability so as to toll the statute.

In September 1986, plaintiff began seeing Dr. Mercola, a family practitioner, for headaches.  In December 1986, Dr. Mercola diagnosed plaintiff as suffering from depression caused by marital discord.  Over the next 2½ years, Dr. Mercola prescribed numerous antidepressant drugs as well as Hydrocet, a narcotic pain killer, for her headaches.  By December 1987, plaintiff's condition had not improved and she had developed a dependency on Hydrocet.  Plaintiff visited Dr. Casiano, a psychiatrist, who also prescribed antidepressant and pain-killing medications. 

On July 8, 1988, Dr. Mercola started plaintiff on Prozac, an antidepressant medication manufactured by Lilly.  At approximately the same time, Dr. Mercola also prescribed Prozac to plaintiff's son, David, to treat attention deficit disorder.  Shortly thereafter, David became violent and started falling asleep in class.  Plaintiff attributed this behavior to the Prozac and on her own discontinued David's use of the drug.  

Plaintiff also experienced symptoms she believed were related to Prozac.  She testified in her deposition that she became withdrawn and began to feel "weird" after starting on Prozac.  She also had a panic attack which she attributed to the drug.  

On April 2, 1989, plaintiff went to Dr. Mercola and asked him to take her off her medications.  She was hysterical and crying.  Dr. Mercola instructed plaintiff to continue taking her medications.  Later that day, plaintiff slashed her left wrist in an apparent attempt to commit suicide.  After the attempt, she put a towel to her wrist to try to stop the bleeding.  

Plaintiff was discovered by her former husband, John Hochbaum, who took her to Humana Hospital, where she was involuntarily admitted.  Later that night, plaintiff voluntarily admitted herself to the psychiatric ward of Central DuPage Hospital and came under the care of Dr. Kenneth Phillips.  Dr. Phillips met with plaintiff the same day and concluded that plaintiff's suicide attempt was the result of her depression, her addiction to pain medication, and her having had about three alcoholic drinks that day.  

Dr. Phillips met with plaintiff again on April 5, 1989.  He stated that he found plaintiff to be fully cognizant of who and where she was and of the events transpiring around her.  She understood the consequences of her actions, and she showed at least average judgment.  Dr. Phillips determined that plaintiff should be discharged the following day, April 6, 1989.  

Ellen Dove was plaintiff's social worker while she was in the hospital.  Dove found plaintiff to be alert and aware during her hospitalization.  Plaintiff was cooperative and planned to attend an addiction recovery group after her discharge.  Dove further noted that plaintiff's insurance was limited, but she believed plaintiff was quite capable of such things as applying for public aid.

Plaintiff's mother, Carol Locascio, visited plaintiff during her hospitalization.  Locascio stated in her deposition that during this visit, plaintiff told her she believed Prozac contributed to her suicide attempt and that she would not have done it if she had not been taking the drug.

Approximately 1½ years later, plaintiff learned through the news media of a possible connection between Prozac and suicidal behavior.  On April 8, 1991, plaintiff filed her complaint in this case seeking damages for her suicide attempt of April 3, 1989.  Following discovery in which the evidence summarized above was gathered, defendants filed a motion for summary judgment for failure to comply with the two-year statute of limitations.  On September 9, 1994, the circuit court granted defendants' motion and entered summary judgment in favor of defendants.

On October 7, 1994, plaintiff filed a motion for reconsideration and attached the affidavit of Dr. Henry Lahmeyer.  In his affidavit, Dr. Lahmeyer stated that he had reviewed plaintiff's medical records and concluded that she was incompetent during the period of her hospitalization.  The trial court found that the affidavit provided some evidence to support plaintiff's position that she was legally disabled during her hospitalization, thus tolling the commencement of the limitations period until April 8, 1989.  However, the court noted that Dr. Lahmeyer may not have applied the appropriate standard -- legal disability.  Therefore, the court invited defendants to depose Dr. Lahmeyer and, if warranted, refile their motion for summary judgment.

On April 25, 1995, defendants deposed Dr. Lahmeyer.  Dr. Lahmeyer stated that he was not applying a "legal disability" standard in drawing the conclusion stated in his affidavit.  He did not specifically find that plaintiff was without understanding or capacity to make or communicate decisions and unable to manage her estate or financial affairs.  His finding that plaintiff was incompetent during her hospitalization was based on his conclusion that she was "unable to make a judgment or a decision about legal matters."   

Based on Dr. Lahmeyer's deposition testimony, defendants refiled their motion for summary judgment.  On January 9, 1996, the circuit court granted defendant's motion.  The court found that there was no issue of material fact as to whether plaintiff was legally disabled during her hospitalization because it was clear that she was nowhere near being "entirely without capacity to communicate decision[s]."  The court further stated that Dr. Lahmeyer's deposition testimony shows that he applied an incorrect standard in his affidavit.  Therefore, the circuit court entered summary judgment in favor of defendants.  On February 7, 1996, plaintiff filed her timely notice of appeal.

Summary judgment is appropriate where there is no genuine issue of material fact and the movant's right to judgment is clear and free from doubt.  
Espinoza v. Elgin, Joliet & Eastern Ry. Co.
, 165 Ill. 2d 107, 113 (1995).  On appeal from an order granting summary judgment, the court must conduct a 
de novo
 review of the evidence.  
Espinoza
, 165 Ill. 2d at 113.  

The circuit court granted summary judgment in favor of defendants because plaintiff's complaint was not filed within the two-year limitations period applicable to medical malpractice and products liability actions.  See 735 ILCS 5/13-212 (West 1996)(medical malpractice); 735 ILCS 5/13-213(b),(d) (West 1996)(products liability).  Plaintiff's attempted suicide occurred on April 3, 1989.  Her complaint in this action was filed on April 8, 1991, more than two years after the date of the injury.

Nonetheless, plaintiff asserts two theories to support her contention that the action is not barred by the statute of limitations.  First, plaintiff claims that, under the discovery rule, the statute did not begin to run until about 18 months after the injury because it was only then that she first learned of the possibility that Prozac may have contributed to her attempted suicide.  Second, plaintiff claims she was legally disabled during her hospitalization, thus tolling the commencement of the limitations period until April 8, 1989.

Under the discovery rule, the statute of limitations "starts to run when a person knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused.  At that point the burden is on the injured person to inquire further into the existence of a cause of action."  
Witherell v. Weimer
, 85 Ill. 2d 146, 156 (1981).  Summary judgment on statute of limitations grounds is appropriate in the face of a plaintiff's assertion that the discovery rule applies only where it is apparent from the undisputed facts that the plaintiff knew or reasonably should have known of the injury and its wrongful causation more than two years prior to bringing the action.  
Witherell
, 85 Ill. 2d at 156.

Here, plaintiff contends that she has raised a genuine issue of material fact as to when she knew or reasonably should have known that Prozac may have contributed to her suicide attempt, and, therefore, the question should have been left to the jury and was inappropriate for summary judgment.  Defendants claim that plaintiff's injury was sudden and traumatic, and that Illinois case law is clear that the discovery rule does not toll the running of the statute of limitations in cases involving such an injury.  Plaintiff counters that under Illinois case law, the discovery rule may apply, even in the case of a traumatic injury, where the injury is one that can occur without negligence and does not involve external forces. 

Plaintiff relies chiefly on the cases of 
Dockery v. Ortiz
, 185 Ill. App. 3d 296 (1989), 
Watkins v. Health & Hospitals Governing Comm'n
, 78 Ill. App. 3d 468 (1979), and 
Pszenny v. General Electric Co.
, 132 Ill. App. 3d 964 (1985).  In 
Dockery
, the plaintiff filed a medical malpractice action more than two years after having both his legs amputated, but allegedly within two years of learning that negligence may have necessitated the amputations.  The court held that because the plaintiff had a history of vascular disease which, in the past, had negatively affected his legs, it could not be said that he reasonably should have known that the amputations may have been wrongfully caused at the time of the injury.  
Dockery
, 185 Ill. App. 3d at 306.  

In 
Watkins
, the plaintiff was a diabetic who brought an action seeking damages for the amputation of his leg, alleging it was necessitated by a blood clot caused by a negligent injection of dye.  The complaint was filed more than two years after the amputation, but less than two years after the plaintiff discovered that the amputation may not have been necessary without the blood clot and negligent injection.  The court held that "the classification of an injury as traumatic or nontraumatic, alone, is of no significance."  
Watkins
, 78 Ill. App. 3d at 471.  The court found that because the plaintiff reasonably believed the amputation was the result of her diabetic condition, a triable issue of fact existed under the discovery rule to determine whether she should have known about the clot more than two years before the action was filed.  
Watkins
, 78 Ill. App. 3d at 472; see also 
Pszenny
, 132 Ill. App. 3d 964 (the symptoms suffered by the plaintiff were not so markedly different from those that caused her to seek treatment in the first place as to trigger a duty to investigate whether the injury was wrongfully caused). 

Illinois case law has not addressed this issue specifically in the context of attempted suicides; however, we believe that the logic employed in 
Dockery
, 
Watkins
, and 
Pszenny
 applies equally in this case.  As in those cases, plaintiff's medical history included an illness that she reasonably may have believed was the cause of her injury.  It is a question of fact whether plaintiff reasonably believed that her depression, rather than her Prozac treatment, caused her to attempt suicide.  

Defendant relies principally on the case of 
Berry v. G.D. Searle & Co.
, 56 Ill. 2d 548 (1974), in which the court adhered to a strict rule that where an injurious event can be characterized as traumatic, the statute of limitations begins to run immediately.  
Berry
, 56 Ill. 2d at 558-59.  In 
Berry
, the plaintiff suffered a paralyzing stroke that she claimed she did not realize was caused, at least in part, by her birth control medication until more than two years after the stroke.  The court held that because a stroke is a sudden and traumatic event, the discovery rule was inapplicable and the limitations period began to run when she suffered the injury.  
Berry
, 56 Ill. 2d at 558-59.  

However, 
Berry
 predates 
Dockery
, 
Watkins
, and 
Pszenny
.  These later cases build on the 
Berry
 rule so as to require that if the alleged negligent cause of an injury is unknown to the plaintiff at the time the injury is sustained, and another non-negligent cause is apparent, then the limitations period does not begin to run until the alleged negligent cause is discovered.  Where a traumatic injury is sustained in the absence of an apparent non-negligent cause, it is fair to place a burden on the injured party to inquire as to the actual cause.  On the other hand, in the case of an injury that appears to have been caused by some non-negligent event, such as an illness, and the actual cause is unknown, the injured party has no reason to conduct such an inquiry and to require him or her to do so would be patently unfair.  Justice is far better served by the rule we have applied here. 

We believe that plaintiff raised a genuine issue of fact in this case as to whether she believed her suicide attempt was caused by her depression and did not become aware of the possible effects of Prozac until 18 months later.  Therefore, the trial court erred in granting summary judgment to defendant.

Plaintiff next contends that she was legally disabled during her hospitalization, and, therefore, the limitations period tolled until April 8, 1989, thus bringing this action within the statute.  A person suffers from a "legal disability" where he or she is "entirely without understanding or capacity to make or communicate decisions regarding his person and totally unable to manage his [or her] estate or financial affairs."  
Estate of Riha v. Christ Hospital
, 187 Ill. App. 3d 752, 756 (1989).  In a personal injury case, a person is not legally disabled if he or she can comprehend the nature of the injury and its implications.  
Sille v. McCann Construction Specialties
, 265 Ill. App. 3d 1051, 1055 (1994).

In this case, both Dr. Phillips and Ellen Dove met with plaintiff during her hospitalization and testified in their depositions that she was perfectly able to comprehend her injury and its implications.  The record also contains further evidence that plaintiff understood her injury and was able to manage her personal affairs and to make and communicate decisions.  Immediately after the attempt, plaintiff applied a towel to her wrist in an effort to stop the bleeding.  Furthermore, upon her admission to Humana Hospital, plaintiff made the decision to voluntarily check herself into the Central DuPage Hospital.  These facts are undisputed and consistent with the opinions of Dr. Phillips and Dove.

Plaintiff claims that she has raised a genuine issue of material fact in presenting the affidavit of Dr. Lahmeyer.  In that affidavit, Dr. Lahmeyer stated that he reviewed plaintiff's records from five years before, and determined that she was incompetent at the time of her hospitalization.  However, in a subsequent deposition, Dr. Lahmeyer stated unequivocally that he was not applying a legal standard.  He could not say that plaintiff was incapable of comprehending the nature of her injuries or managing her personal and financial affairs.  Rather, Dr. Lahmeyer's conclusion that plaintiff was incompetent was based on his belief that she was unable to make any decisions concerning legal matters.

Clearly, therefore, the conclusion stated in Dr. Lahmeyer's affidavit is insufficient as a matter of law.  The only relevant evidence supports the circuit court's conclusion that plaintiff was not legally disabled during her hospitalization.  There is no evidence to the contrary.  

In conclusion, the circuit court erred in finding that plaintiff failed to raise a genuine issue of material fact as to the applicability of the discovery rule.  However, the court correctly found that plaintiff was not legally disabled as a matter of law.  For these reasons, the circuit court's entry of summary judgment is reversed, and the case is remanded for proceedings consistent with this opinion.

Affirmed in part; reversed in part, and remanded.

CAMPBELL, P.J. and O'BRIEN, J., concur.