GINA R. BASHAM, Plaintiff-Appellant, v. ERIC J. HUNT *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 1—00—3886

Opinion filed July 17, 2002.

David J. Fitzpatrick, of David J. Fitzpatrick & Associates, of Chicago, for appellant.

Mara S. Georges, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Marc J. Boxerman, Assistant Corporation Counsel, of counsel), for appellees.

PRESIDING JUSTICE HALL delivered the opinion of the court.

The plaintiff, Gina Basham, filed suit against the defendants, the City of Chicago (the City) and its employee, Eric Hunt, seeking damages for injuries she suffered when she was run over by a garbage truck, owned by the City and operated by Mr. Hunt. The circuit court of Cook County granted summary judgment to the defendants on the basis that the complaint was barred by the statute of limitations. The plaintiff filed a timely notice of appeal.

On appeal, the plaintiff raises the following issues: (1) whether the Local Governmental and Governmental Employees Tort Immunity Act's (Tort Immunity Act) (745 ILCS 10/8—101 (West 1996)) one-year statute of limitations was tolled by the plaintiff's legal disability; (2) whether the defendants waived the one-year statute of limitations; (3) whether the circuit court abused its discretion by allowing Eric Hunt to join in the City's motion for summary judgment; and (4) whether the circuit court erred when it granted summary judgment to the defendants.

Because this is an appeal from the granting of summary judgment,

the pertinent facts are taken from the pleadings and depositions contained in the record.

On August 11, 1998, the plaintiff filed suit against the City and Eric Hunt seeking damages for personal injuries arising out of the events of July 18, 1997.

On July 18, 1997, around 5 p.m., the plaintiff left her office to meet David Johnson, and the two of them walked to a wine bar. At around 7 p.m., they were joined by Tim Dinan. At the wine bar, the plaintiff drank one glass of wine and two sips of another glass of wine. Afterwards, the plaintiff and the two men went to the Cactus Club, where they were joined by David Rudsinski. The plaintiff drank one margarita. However, she could not recall whether she had any more to drink at the Cactus Club. She could not recall leaving the Cactus Club or any of the circumstances of the accident. After the accident, she had no recollection of events until August 15, 1997.

The plaintiff did not remember meeting Walter Johnson on the evening of the accident. However, according to Walter Johnson, he joined the plaintiff and her group at the Cactus Club. Walter stated that the plaintiff had two drinks at the Cactus Club, basing it on the fact that the group had two rounds of drinks. The group left the Cactus Club around closing time and began walking north. When they reached the northwest corner of Wells Street and Van Buren Street, the light for southbound traffic was red. The plaintiff walked into the street and began waving her arms in front of a garbage truck.

Walter yelled to the plaintiff to get out of the intersection, but she would not do so. Walter appealed to Mr. Rudsinski, the plaintiff's boyfriend, and to David Johnson to get the plaintiff out of the street. A man in the garbage truck began yelling at the plaintiff, and she yelled back. The man got out of the truck and talked to the plaintiff. The man got back in the truck at some point. Frustrated that no one could get the plaintiff out of the street, Walter resolved to carry the plaintiff out of the street and went around the back of the truck. By the time he reached the back of the truck, the truck was moving. He observed the truck "bounce" and saw the plaintiff roll toward the center of the street.

Walter recalled that the plaintiff did climb on the front of the truck. He did not have visual contact with the plaintiff at the time the truck started to move. He recalled speaking to a couple at the scene who stated that they had seen the driver of the garbage truck push the plaintiff off the side of the truck.

David Rudsinski met the plaintiff and the others at the Cactus Club close to 8 p.m. He recalled that the plaintiff had one or two margaritas. After leaving the Cactus Club, the group crossed Wells Street

to another bar so that the plaintiff could use the restroom. The group then crossed Wells Street at Van Buren Street. Mr. Rudsinski was holding the plaintiff's hand as they crossed Wells Street. He let go of her hand while he was looking around for a cash station and then lost sight of her. He did notice a garbage truck, but he did not observe where the plaintiff was prior to the traffic beginning to move. After the garbage truck began to move, he heard the plaintiff moaning and yelling, and he walked back and saw her on the ground.

Kay Classon was proceeding southbound on Wells Street and stopped in the east lane of Wells Street at Van Buren Street for a red light. There was one car ahead of her at the light, and next to that car was a garbage truck, in the west lane of Wells Street. Ms. Classon observed the plaintiff standing directly in front of the truck with her arms outstretched to each side. The plaintiff then came around to the driver's side of the truck and attempted to get up on the side of the truck. The plaintiff managed to pull herself up more than once. According to the witness, the driver of the truck kept trying to push the plaintiff off the truck with his arm. The plaintiff did get up and down off the truck a couple of times. The plaintiff was still on the running board of the truck when the light turned to green, and the truck began to move, at which point the plaintiff disappeared from view. Ms. Classon observed the rear wheels of the truck go up and over something but did not see what it was.

However, Ms. Classon then acknowledged that she did not know where the truck driver last saw the plaintiff prior to starting to move the truck. She also could not specifically state where the plaintiff's hands or feet were when the truck started to move.

Linda Truckenmiller was in a car driven by her husband southbound on Wells Street approaching the intersection of Wells Street and Van Buren Street, when she first observed the plaintiff with two men crossing east to west near the intersection. At the middle of the crosswalk, the plaintiff left the crosswalk and proceeded toward the traffic while the two men continued to the curb. The plaintiff stood in the center between the two southbound lanes of Wells Street and began waving her arms as though she were stopping traffic. As the Truckenmiller car came to a stop at the light, the plaintiff was standing to Mrs. Truckenmiller's right side.

A garbage truck was approaching in the west lane of southbound Wells Street and stopped approximately three to five feet in front of the plaintiff. As the truck came to a stop, the plaintiff stepped in front of it. One of the plaintiff's friends attempted to pull her back to the curb, but she brushed him off. The plaintiff then proceeded around the truck to the driver's door and grabbed the handrail, trying to pull

herself onto the running board, but she was unsuccessful. The plaintiff's second attempt was more successful, and she managed to get both feet on the running board of the truck, at which point the driver of the truck pushed her down with his arm. The plaintiff got back on the running board, and the driver again pushed her down.

Mrs. Truckenmiller then observed the plaintiff make a fourth attempt to get back on the running board of the truck as the light turned to green. The plaintiff's right hand was on the grab bar of the truck, and her left leg was on the running board. The plaintiff then put her left hand on the grab bar while her right leg was hopping along the street. The plaintiff had not been able to get on the running board as the truck was moving, so she was hopping along as she passed Mrs. Truckenmiller. After making one last effort to get on the running board, the plaintiff slumped into almost a squatting position on the running board with her right leg swung under the running board and the truck. The plaintiff then fell to the street on her left side, and the left rear wheels of the truck rolled over her legs between her knees and her pelvis.

In an effort to clarify her testimony, Mrs. Truckenmiller explained that at the time the light turned to green, neither the plaintiff's hand nor her left foot was on the truck. However, the truck did not move immediately. By the time the truck did begin to move, the plaintiff's right hand was on the grab bar, but her left foot was not on the running board. After the truck began to move, the plaintiff placed her left foot on the running board. The plaintiff did have an opportunity to let go of the truck before it entered the intersection.

Eric Hunt was driving the garbage truck with two helpers, Anthony Morgan (now deceased) and Sumatro Simpson. Mr. Hunt was proceeding southbound on Wells Street in the west lane and was midway between Jackson Boulevard and Van Buren Street when he first observed the plaintiff. The plaintiff was about 15 feet north of the crosswalk at Van Buren Street and Wells Street, standing in the west lane of Wells Street. There was a man with the plaintiff who was trying to pull her out of the street. The plaintiff had been "bothering" a woman in red car double parked in the east lane of southbound Wells Street. As he approached the intersection, Mr. Hunt slowed down because the plaintiff was walking in his lane.

The plaintiff was about 10 to 15 feet in front of the truck when she began waving her hands above her head. After about 10 to 15 seconds, she came face to face with the truck. Mr. Hunt had been continually blowing the truck's horn to get the plaintiff to move out of the truck's way. The plaintiff then walked around the side of the truck and twice attempted to climb up on the steps of the truck. When she

finally got up on the truck, Mr. Hunt told her to get off the truck. Mr. Hunt described the plaintiff as "not saying anything, not one word. She mumbled. She was like a zombie." Mr. Hunt used a hand gesture as he was telling the plaintiff to get down off the truck, but he did not touch the plaintiff. The plaintiff did not respond, so Mr. Hunt had to repeat the request that she get down off the truck. Mr. Hunt did not recall if he used the hand gesture the second time. Mr. Hunt had to tell the plaintiff several times to get off the truck, and finally she did so. After the plaintiff got down from the truck, she did not attempt to get back on the truck.

Mr. Hunt waited 5 to 10 seconds to make sure the plaintiff was off and clear of the truck before proceeding southbound. Just as the truck was about to enter the intersection, he heard a "thump." He did not know that he had struck the plaintiff, but he knew he had hit something. Mr. Hunt looked in the mirror of the truck and saw people coming from the east side of Wells Street. He moved the truck to clear the intersection.

On the night of the plaintiff's accident, Sumatro Simpson was working on the garbage truck with Eric Hunt and Anthony Morgan. Mr. Simpson was seated between Mr. Morgan and Mr. Hunt. He did not recall where the accident took place, but he recalled that the truck was probably southbound on Wells Street. He first observed the plaintiff in the crosswalk after the truck had just come to a stop. The truck stopped because the plaintiff was flagging down the truck. By the time the truck had come to a complete stop, the plaintiff had walked around the front of the truck. The truck "creeped" forward up to the intersection and then stopped again. The plaintiff then tried to climb onto the side of the truck, at which point Mr. Hunt asked her to get down. Mr. Simpson heard Mr. Hunt tell the plaintiff to get down, but he did not see him push her down because he was not watching Mr. Hunt that closely. He observed the plaintiff's head "pop up" in the driver's window possibly two or three times. As the truck started forward, Mr. Simpson observed Mr. Hunt watching the plaintiff on the side of the truck, although he himself could not see her. Mr. Simpson did not know where the plaintiff was when the truck started to move. He did not feel the truck hit the plaintiff. As a precaution, he looked out the side window and through the side mirror saw that the plaintiff was on the ground. Mr. Simpson informed Mr. Hunt of what he had seen, and Mr. Hunt immediately stopped the truck.

According to Dr. Marc Tellez, the plaintiff's treating physician, the plaintiff had a blood-alcohol content of .236 at the hospital. Dr. Tellez opined that such a level would impair the plaintiff's motor skills and cognition. In his report, Dr. Daniel J. Brown concluded that at the

time of the accident, the plaintiff's blood-alcohol content was .226, and in his opinion, "she was highly intoxicated, and that the mental and motor skills she needed to conduct her activities with both safety and due care were greatly diminished by the presence of alcohol."

On March 30, the circuit court entered an order setting the case for trial on August 28, 2000.

On April 28, 2000, the City filed a motion for summary judgment. The City argued that it did not breach its duty of care to the plaintiff and that there was no issue of genuine material fact as to the plaintiff's responsibility for her injuries. In addition, for the first time, the City raised the issue of the plaintiff's failure to file her complaint within the one-year statute of limitations applicable to actions against municipalities. See 745 ILCS 10/8—101 (West 1996).

The plaintiff filed a response to the motion for summary judgment contending that the defendants breached their duty of ordinary care to the plaintiff and that the issue of the plaintiff's contributory negligence was for the jury to decide in light of the conflicting testimony. The plaintiff further contended that her physical and mental incapacity tolled section 8—101's one-year statute of limitations. The plaintiff also maintained that by participating in discovery over the previous two years, the City had waived the issue of the statute of limitations.

The City filed a response which was captioned "DEFENDANTS' REPLY IN SUPPORT OF THEIR SUMMARY JUDGMENT MOTION" and indicated that the reply included Mr. Hunt as well as the City.

On August 17, 2000, the circuit court informed the parties that it was issuing a written decision but orally announced that it was granting the motion for summary judgment based upon the statute of limitations. The plaintiff's attorney pointed out that the motion for summary judgment was brought on behalf of the City only and that only in the City's reply were the City and Mr. Hunt referred to collectively.

On August 18, 2000, the City filed a motion to clarify or, in the alternative, to allow Mr. Hunt to join in the motion for summary judgment.[1] On that same date, the circuit court ordered that the motion to clarify be taken under advisement and that the motion would be addressed in the court's written ruling.

On August 22, 2000, the circuit court issued its written opinion

---

[1]The motion to clarify is not contained in the record on appeal. According to the City, the plaintiff indicated that a motion to supplement the record would be filed to include that motion. However, no such motion was filed.

granting the motion for summary judgment based upon the plaintiff's failure to file her complaint within one year of the accident. The circuit court found that section 8—101 of the Tort Immunity Act controlled over the tolling provisions of section 13—211 of the Code of Civil Procedure (the Code) (735 ILCS 5/13—211 (West 1996)), relying on the supreme court's decision in *Tosado v. Miller*, 188 Ill. 2d 186, 720 N.E.2d 1075 (1999).

On October 12, 2000, the circuit court denied the plaintiff's motion for reconsideration. However, the plaintiff's attorney noted that the circuit court had not addressed the issues of the defendants' waiver of the statute of limitations, which was raised in the plaintiff's response to the motion for summary judgment, or the joinder of Mr. Hunt in the motion for summary judgment. The plaintiff argued that the joinder of Mr. Hunt violated the local rule requiring motions for summary judgment to be filed 45 days prior to trial. Cook Co. Cir. Ct. R. 2.1(f) (as amended, eff. April 23, 1992; August 21, 2000).

The circuit court acknowledged that it had not addressed the waiver issue, stating that it never reached it. The court did determine that the failure to join Mr. Hunt in the motion for summary judgment was due to inadvertence on the part of the City and allowed him to join in the motion for summary judgment.

The plaintiff filed a timely notice of appeal on November 13, 2000.

## ANALYSIS

### Standard of Review

■ The court reviews the granting of a motion for summary judgment *de novo. Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102, 607 N.E.2d 1204, 1209 (1992).

### Discussion

### I. Statute of Limitations

The plaintiff contends that the circuit court erred when it ruled that the Tort Immunity Act's one-year statute of limitations (745 ILCS 10/8—101 (West 1996)) was not tolled by section 13—211 of the Code (735 ILCS 5/13—211 (West 1996)).

■ Section 13—211 provides as follows:

"If the person entitled to bring an action, specified in Sections 13—201 through 13—210 of this Act, at the time the cause of action accrued, is under the age of 18 years, or is under a legal disability, then he or she may bring the action within 2 years after the

person attains the age of 18 years, or the disability is removed." 735 ILCS 5/13—211 (West 1996).[2]

A person suffers from a " 'legal disability' where he or she is 'entirely without understanding or capacity to make or communicate decisions regarding his person and totally unable to manage his [or her] estate or financial affairs.' [Citation.]" *Hochbaum v. Casiano*, 292 Ill. App. 3d 589, 595, 686 N.E.2d 626, 631 (1997). In a personal injury case, a person is not legally disabled if he or she can comprehend the nature of the injury and its implications. *Hochbaum*, 292 Ill. App. 3d at 595-96, 686 N.E.2d at 631.

The deposition testimony of Dr. Tellez established that the plaintiff was legally disabled from the date of her injury until August 16 or 17, 1997. His testimony on that point may be summarized by his response when he was questioned as follows:

"Q. So is it fair to say based on that note—and I think you earlier described that [the plaintiff] was weaned off of sedation sometime around 8/14, 8/15—that she really wasn't in possession of her mental faculties from the time of her admission to the hospital up to and including April? I think you said April 17 or 16—excuse me, August 16 or 17 of '97?

A. That's correct."

However, even if the plaintiff was legally disabled, the question remains which period of limitations controls.

In *Tosado v. Miller*, a plurality of our supreme court held that the one-year limitations period of section 8—101 governed medical malpractice cases brought against local governmental entities and their employees rather than the two-year limitations period of section 13—212(a) of the Code. *Tosado*, 188 Ill. 2d at 196, 720 N.E.2d at 1081.

Subsequent to its decision in *Tosado*, the supreme court considered the case of *Ferguson v. McKenzie*, 202 Ill. 2d 304 (2001). In that case, the court was asked to decide whether section 8—101 controlled over section 13—212(b) of the Code (735 ILCS 5/13—212(b) (West 1996)).

In contrast to section 13—212(a), which was at issue in *Tosado* and which deals with an adult's action for medical malpractice, section 13—212(b), at issue in *Ferguson*, deals with the situation in which a minor is the injured party, and provides that medical malpractice action must be brought within eight years of the act alleged to be the

---

[2]In its written opinion, the circuit court stated that the plaintiff was not bringing her action pursuant to any of the specified sections in section 13—211. However, section 13—211 refers to "an action, specified" in those specific sections. Section 13—202 provides for actions for damages for personal injury. 735 ILCS 5/13—202 (West 1996).

cause of the injury, but in no event may the cause of action be brought after the minor's twenty-second birthday. 735 ILCS 5/13—212(b) (West 1996).

In *Ferguson*, the plaintiff brought a wrongful death action against Cook County and its physician employees on behalf of herself and her children, one of whom, Karen, was 17 years and 5 months old at the time of the alleged act of malpractice. The defendants were granted summary judgment on the basis that the complaint was not filed within one year of the occurrence as required by section 8—101. The appellate court affirmed, and the plaintiff appealed to the supreme court.

While conceding that her claim and those of her adult children were time-barred under the holding in *Tosado*, the plaintiff argued that she had until Karen's twenty-second birthday to file a wrongful death action against the defendants.

The supreme court disagreed. Relying on its decision in *Tosado*, the court determined that while section 13—212(b) applied to Karen since she was a minor when the cause of action accrued, once she became 18 years of age, section 8—101 also applied to her and began to run. Therefore, Karen's claim which was filed when she was 19 years and 5 months of age was untimely. *Ferguson*, 202 Ill. 2d at 312-14.

In reaching that result, the court relied on its reasoning in *Tosado*. The court noted that legislative intent of section 13—212(b) was to reduce the period of potential liability and restrict a minor's ability to sue, while the intent of section 8—101 was to encourage early investigation and prompt settlements of meritorious claims against government entities and allow them to plan their budgets in light of potential liabilities. The court concluded that its holding gave effect to the underlying policy of each provision and protected the possible claims of the minors against local governments by preserving the repose period for minors. *Ferguson*, 202 Ill. 2d at 313-14.

■ Under the analysis in both *Ferguson* and *Tosado*, section 8—101 controls over section 13—211, and therefore, the plaintiff would not have had the full two years provided for in section 13—211. However, the plaintiff's complaint was timely filed because the complaint was filed on August 11, 1998, within one year after she was no longer legally disabled, which occurred between August 16 and 17, 1997, according to Dr. Tellez. Therefore the plaintiff's complaint was filed in compliance with section 8—101 of the Tort Immunity Act. Compare *McKinnon v. Thompson*, 325 Ill. App. 3d 241, 758 N.E.2d 316 (2001) (section 8—101's one-year statute of limitations applied to the minor's cause of action, but the one year did not begin to run until after the minor reached 18 years of age, pursuant to section 13—211 of the

Code). In light of the decision in *Ferguson*, the defendants have abandoned their argument that the plaintiff's complaint was barred by section 8—101 of the Tort Immunity Act.

We conclude that the plaintiff's complaint was not time-barred. Therefore, we need not address the issue of whether the defendants waived the statute of limitations defense.

## II. Joinder of Eric Hunt to the Motion for Summary Judgment

The text of this discussion is nonpublishable.

## III. Summary Judgment

■ Summary judgment is proper if and only if the pleadings, depositions, admissions, affidavits and other relevant matters on file show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Smith v. Tri-R Vending*, 249 Ill. App. 3d 654, 657, 619 N.E.2d 172, 174 (1993). The purpose of summary judgment is not to try a question of fact but to determine if one exists. *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511, 517, 622 N.E.2d 788, 792 (1993). In determining whether a genuine issue of material fact exists, courts construe the pleadings, admissions and affidavits strictly against the movant and liberally in favor of the opponent. *Gilbert*, 156 Ill. 2d at 518, 622 N.E.2d at 792. A triable issue precluding summary judgment exists where the material facts are disputed or where reasonable persons might draw different conclusions from the undisputed facts. *Gilbert*, 156 Ill. 2d at 518, 622 N.E.2d at 792.

■ In an action based upon negligence, the plaintiff must set out sufficient facts establishing a duty owed by the defendant to the plaintiff, a breach of that duty and that the injury was proximately caused by the breach. *Vesey v. Chicago Housing Authority*, 145 Ill. 2d 404, 411, 583 N.E.2d 538, 541 (1991). The existence of a duty must be determined by the court as a matter of law, but the questions of whether there was a breach and whether that breach was a proximate cause of the injury are questions of fact for the jury. *Rodriguez v. Norfolk & Western Ry. Co.*, 228 Ill. App. 3d 1024, 1037-38, 593 N.E.2d 597, 607 (1992).

The defendants contend that summary judgment for them was proper in this case because there is no genuine issue of fact as to whether the defendants breached their duty of care to the plaintiff.

### A. The Plaintiff's Status

■ Generally, a person present on, or riding in, a vehicle without the knowledge or consent of the owner and driver is in legal contemplation a trespasser. General principles as to the status and li-

ability of trespassers on personal property, as distinguished from invitees or licensees, apply in the case of trespassers on or in a motor vehicle. 60A C.J.S. *Motor Vehicles* § 401 (1969). We agree with the defendants, that the same fundamentals and consideration that determine liability for possessors of land apply as well to personal property that may be entered upon. See *McVicar v. W.R. Arthur & Co.*, 312 S.W.2d 805, 812 (Mo. 1958).

The operator or owner of a motor vehicle is under no duty to exercise care for the safety of an occupant in the status of a trespasser except to refrain from willful or wanton misconduct, except as to such occupant whose presence is known and who is in a position of peril; in which instance a duty arises to act as a reasonably prudent person would act under the same circumstances to protect the occupant's safety. 5 P. Kelly, Blashfield Automobile L. & Prac. § 200.10 (2000).

■ Under Illinois common law, a judge's determination of the nature of the duty a landowner or occupier of land owes to an entrant on his land is governed by his status as a trespasser, licensee or invitee. *Rodriguez*, 228 Ill. App. 3d at 1038, 593 N.E.2d at 607. The question of a plaintiff's status should be decided as a matter of law if there are no factual questions present. *Rodriguez*, 228 Ill. App. 3d at 1042, 593 N.E.2d at 610.

The plaintiff relies on sections of the Illinois Vehicle Code (Vehicle Code) which state that drivers of authorized emergency vehicles are not relieved of their duty to drive with due regard for the safety of all persons using the highway. See 625 ILCS 5/11—205(e), 11—907 (West 1996). However, the City's garbage truck is not an authorized emergency vehicle under the Vehicle Code. See 625 ILCS 5/1—105 (West 1996).

Section 11—1003.1 of the Vehicle Code requires vehicle drivers to exercise due care to avoid colliding with any pedestrian and provides that they "shall exercise proper precaution upon observing any *** intoxicated person." 625 ILCS 5/11—1003.1 (West 1996). However, the defendants maintain that the plaintiff's status was not that of a pedestrian but, rather, that of an unknown trespasser on the City's garbage truck. The defendants rely on *Gauss v. Wolter*, 233 Ill. App. 353 (1924) (where the plaintiff was a trespasser in the auto-truck, the defendant owed only a duty not to willfully injure the plaintiff).[3] While *Gauss* is not precedential authority, nonetheless, in the absence of any

---

[3]Appellate court cases decided prior to 1935 are not binding authority and have no precedential value. See *Universal Underwriters Insurance Co. ex rel. Manley Ford, Inc. v. Long*, 215 Ill. App. 3d 396, 400, 574 N.E.2d 1284, 1286 (1991).

contrary authority, it provides an indication that early on in Illinois there was a recognition that the duty owed to trespassers on land would be applied to trespassers to automobiles.

■ A trespasser is one who enters upon the premises of another with neither permission nor invitation and intrudes for some purpose of his own or at his convenience or merely as an idler. *Rodriguez*, 228 Ill. App. 3d at 1038, 593 N.E.2d at 607. Generally, the rule in Illinois is that a landowner owes a trespasser only the duty to refrain from willfully or wantonly injuring him. *Lee v. Chicago Transit Authority*, 152 Ill. 2d 432, 446, 605 N.E.2d 493, 498 (1992). However, our supreme court noted that there are exceptions to the above rule and has long recognized that a landowner must use ordinary care to avoid injury to a trespasser who has been discovered in a place of danger on the premises. *Lee*, 152 Ill. 2d at 446, 605 N.E.2d at 498.

■ The record in this case raises a factual question as to the plaintiff's status. While there is no dispute that she had climbed on the City truck more than once, the evidence is conflicting as to whether she was still on the truck when it began to move. According to Linda Truckenmiller, at the time the truck began to move, the plaintiff's right hand was on the grab bar; after the truck began to move, the plaintiff placed her left foot on the running board of the truck. However, according to Eric Hunt, the plaintiff had gotten off the truck and had never attempted to climb back on again prior to the truck moving. Mr. Hunt also stated that he made sure that the plaintiff was off and clear of the truck before the truck moved. While Ms. Classon originally testified that the plaintiff was on the running board when the truck began to move, she later admitted that she could not state where the plaintiff's hands and feet were when the truck started to move. The other witnesses were not able to view the plaintiff at the time the truck began to move.

Even assuming that the plaintiff was a trespasser on the City's truck, the defendants owed her a duty of ordinary care if the plaintiff was a "known trespasser." *Lee*, 152 Ill. 2d at 446, 605 N.E.2d at 498. There is no dispute that Mr. Hunt was aware of the plaintiff's presence on the truck, since he had to tell her several times to get off the truck. While he testified that the plaintiff was off the truck when the truck began to move, Mrs. Truckenmiller testified that the plaintiff was hanging onto the truck when it began to move and, as it was moving, managed to get her left leg on the running board of the truck.

The defendants argue that the plaintiff could not be a "known trespasser" since Mr. Hunt believed that the plaintiff was off the truck when it began to move. However, once Mr. Hunt was initially aware of the plaintiff's presence, she did not cease to be "known"

because he did not see her on the truck again, especially in light of her attempt more than once to board the truck. Moreover, the defendants' position that the plaintiff was a trespasser is at odds with Mr. Hunt's testimony that he made sure that the plaintiff was not on the truck when he put the truck in motion.

The record in this case raises a genuine issue as to the plaintiff's status, and thus, that issue must be submitted to the trier of fact.

## B. Breach of Duty

■■ The record in this case also raises a factual question as to whether Mr. Hunt's conduct in moving the truck breached the duty of care the defendants owed to the plaintiff. Even if, as the defendants argue, their duty to the plaintiff, as an unknown trespasser, was limited to not willfully or wantonly injuring her, Mr. Hunt's conduct in moving the truck could be held to be willful and wanton if he was aware she was still on the truck or still attempting to board the truck when he began to move the truck. Conduct characterized as willful and wanton may be proven where the acts have been less than intentional—"*i.e.*, where there has been 'a failure, after knowledge of impending danger, to exercise ordinary care to prevent' the danger, or a 'failure to discover the danger through *** carelessness when it could have been discovered by the exercise of ordinary care.' [Citation.]" *Ziarko v. Soo Line R.R. Co.*, 161 Ill. 2d 267, 274, 641 N.E.2d 402, 406 (1994).

The defendants argue that Mr. Hunt went to great lengths to ensure the plaintiff's safety. They point out that he told her to stay off the truck, made sure that the plaintiff was not touching the truck, and pulled away slowly. Nonetheless, Mr. Hunt's testimony was contradicted by that of Mrs. Truckenmiller, who testified that the plaintiff was holding onto the truck when it began to move.

The evidence in this case presents a genuine issue of fact as to whether the defendants breached their duty of care, even if the plaintiff's status was that of an unknown trespasser on the City's garbage truck.

## C. The Plaintiff's Contributory Negligence

The defendants also contend the plaintiff cannot prevail because her own contributory fault was more than 50% of the proximate cause of her injuries. See 735 ILCS 5/2—1116 (West 1996).

The defendants maintain that the plaintiff's conduct was more than 50% of the proximate cause of her injuries. They point to her behavior in standing in the middle of the intersection, her refusal of all efforts to remove her from the middle of the street and her continued efforts to get on the City garbage truck despite Mr. Hunt's

warnings and efforts to keep her off. The defendants also maintain that while the plaintiff was intoxicated at the time she was injured, she was not relieved from the duty of exercising the same care as a person who is sober. *Dezort v. Village of Hinsdale*, 35 Ill. App. 3d 703, 710, 342 N.E.2d 468, 474 (1976).

A plaintiff is contributorily negligent when he acts without that degree of care which a reasonably prudent person would have used for his own safety under like circumstances and which action is the proximate cause of his injuries. *Zook v. Norfolk & Western Ry. Co.*, 268 Ill. App. 3d 157, 170, 642 N.E.2d 1348, 1358 (1994). Ordinarily, the question of contributory negligence is a question of fact for the jury, but it becomes a question of law when all reasonable minds would agree that the evidence and the reasonable inferences therefrom, viewed in the light most favorable to the nonmoving party, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. *West v. Kirkham*, 207 Ill. App. 3d 954, 958, 566 N.E.2d 523, 525 (1991).

The defendants rely on *Reuter v. Korb*, 248 Ill. App. 3d 142, 616 N.E.2d 1363 (1993). In that case, the reviewing court upheld a trial court's entry of a directed verdict in the defendant's favor where it was readily apparent from the evidence that the plaintiff was more than 50% at fault.

The evidence in *Reuter* established that the plaintiff, who was highly intoxicated, suddenly appeared in front of the defendant's car in a pitch-dark area of the roadway. The plaintiff was not in an area where the defendant should have known or expected a pedestrian, and the plaintiff was not at a distance that allowed the defendant to honk, slow down or swerve. There was also evidence that the defendant was looking straight out his windshield in the direction that his headlights, which were operating properly, were shining when the plaintiff unexpectedly appeared. *Reuter*, 248 Ill. App. 3d at 153, 616 N.E.2d at 1371.

The present case presents a different situation. We note that intoxication is not negligence *per se* but simply a circumstance to be weighed by the jury in its determination of the issue of due care. *Dezort*, 35 Ill. App. 3d at 710-11, 342 N.E.2d at 474. In the present case, the plaintiff did not come out of nowhere to be run over by the truck operated by Mr. Hunt. Unlike the defendant in *Reuter*, Mr. Hunt was aware of the plaintiff's presence prior to the accident. While he testified that he made sure that the plaintiff was not on the truck when it began to move, his testimony was contradicted by that of Mrs. Truckenmiller.

Moreover, in *Reuter*, the appeal was from a directed verdict, and

the appellate court reviewed the issue under an abuse of discretion standard. *Reuter*, 248 Ill. App. 3d at 153, 616 N.E.2d at 1371 (court found that it was within the trial court's discretion to take the case from the jury and direct a verdict for the defendant). In the present case, our review is *de novo*.

The record in this case presents a genuine issue of fact as to whether the plaintiff's own conduct was more than 50% of the proximate cause of her injuries. Therefore, summary judgment in this case was improper on this basis as well.

We conclude that there are genuine issues of material fact which preclude the grant of summary judgment in this case.

The judgment of the circuit court granting summary judgment to the defendants is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

WOLFSON and SOUTH, JJ., concur.